JOHN P. THOMAS, Respondent, v. JOSEPH SMITH, Appellant.

St. Louis Court of Appeals, December 6, 1892.

1. **Malicious Prosecution:** RELEVANCY OF EVIDENCE.   This action was for malicious prosecution, based upon the arrest of the plaintiff at

Thomas v. Smith.

the instance of the defendant on a charge of larceny in taking $50, under a disputed claim of title, all the facts as to which were, at the time, within the knowledge of both parties. Subsequently to the discharge of the plaintiff, the claim of title, under which the plaintiff had taken this money, was adjudged invalid in a civil suit instituted against the defendant by the plaintiff and a third person. *Held,* that this judgment was relevant in the case at bar, both as to the alleged malice of the defendant and the want of probable cause.

2. ———: PROBABLE CAUSE: LAW AND FACT. What amounts to probable cause in an action for malicious prosecution is a question of law. When the facts are not in dispute, the existence of probable cause is purely a question of law; when they are in dispute, it is the function of the court to determine, and upon proper request to hypothetically instruct the jury, whether a given state of facts shown by the evidence constituted probable cause. And *held* that the refusal of an instruction in this cause, declaring that certain facts constituted probable cause for a prosecution for larceny, was erroneous.

3. ———: ———: NON-DIRECTION OF JURY. But *held* further in the course of discussion that, in the absence of a request for instructions in a case of disputed facts, the omission of the court to declare what did or did not constitute probable cause is mere non-direction, and, therefore, not error.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*C. P. & J. D. Johnson,* for appellant.

(1) The judgment in the partnership accounting suit between plaintiff and wife against the defendant was conclusive as to the ownership of the money, alleged in the criminal information to have been stolen by plaintiff, and estopped the latter from asserting title thereto in his wife, or from denying that it was the property of the defendant. The ownership of the money was a fact, having a material bearing upon the question of the existence of probable cause for the institution of the criminal prosecution against the plaintiff; hence, the trial court erred in excluding from the evidence that

portion of the record in the partnership accounting suit, mentioned *supra*. Bigelow on Estoppel [4 Ed.] pp. 60–68, 83–98; *Speck v. Riggin*, 40 Mo. 405. (2) Broadly stated, in cases for the recovery of damages for malicious prosecution, one of the main questions is, whether or not there was probable cause for the institution of the alleged prosecution, and it is the duty of the court to instruct the jury hypothetically what facts, if proved, constitute the same; therefore, the trial court erred in refusing to give defendant's third instruction refused, and in giving instructions, numbered 1 and 4, given on behalf of plaintiff. *Meysenburg v. Engelke*, 18 Mo. App. 351; *Sharpe v. Johnston*, 76 Mo. 660; *Hill v. Palm*, 38 Mo. 22; 2 Greenleaf on Evidence, sec. 454, p. 418; *Linville v. Walsh*, 29 Mo. 204.

*Thoroughman & Cantwell*, for respondent.

(1) The record in the case of Antoinette Thomas *v.* Smith was inadmissible, because no plea of *res judicata* nor of estoppel was raised by the pleadings. *Ferneau v. Whitford*, 39 Mo. App. 316; *Kelly v. Hurt*, 61 Mo. 463. (2) The hypothetical instruction, numbered 3, offered by defendant was properly refused, because there was no evidence to support it, and because a hypothetical instruction which requires the jury to find probable cause, if they find certain facts, is only proper when there can be but one conclusion as to the effect of the facts, if proven. *Boogher v. Hough*, 99 Mo. 188. (3) The defendant having asked, and the court having given, a definition of probable cause and of malice in instruction, numbered 3, the defendant cannot now claim that it was error to submit the question of probable cause to the jury, because this error, if it were an error, was induced by defendant. *Drey v. Doyle*, 99 Mo.

459; *Jennings v. Railroad*, 99 Mo. 394; *Tetherow v. Railroad*, 98 Mo. 74; *Wilkins v. Railroad*, 101 Mo. 93.

ROMBAUER, P. J.—The action is for malicious prosecution. The plaintiff recovered a verdict and judgment. The defendant assigns for error the exclusion of legal evidence, and the refusal of a proper instruction offered by him. It is essential to an intelligent discussion of the questions thus presented to set out so much of the evidence as bears upon them.

The plaintiff's wife and the defendant formed a copartnership in 1886 by written articles. The object of the partnership was to conduct a barber shop under the Lindell Hotel in St. Louis. The shop had been conducted prior to that time by the plaintiff and one Dora, under the firm-name of Thomas & Dora. When the defendant became a partner of plaintiff's wife, the sign was changed to Thomas & Co., but there was nothing to indicate to the outside world that the Thomas of Thomas & Co. was not the plaintiff, James P. Thomas, as he remained in the barber shop as before, representing his wife, who was then and has ever since been a resident of Alton, Illinois. In March, 1885, one Rapier obtained judgment against the plaintiff, an execution was issued on this judgment, and the plaintiff's interest in the barber shop sold thereunder on June 10, 1889. Possession of this interest was delivered to the purchaser, one Laughlin, who first put a watchman in charge, but afterwards withdrew the watchman and requested one of the employes in the shop to attend to his interests. The plaintiff remained in the shop claiming that, as the execution was directed against him, his wife's interest did not pass by the sale; he did not, however, interfere with the property or money in the shop until the date hereinafter mentioned. Immediately after the sale the purchaser Laughlin and

the defendant entered into an agreement, whereby, for the purpose of preserving the trade of the shop, the defendant was to keep it going and retain the proceeds thereof until such time as an agreement could be arrived at between him Laughlin touching their respective interests. In July, 1889, and while this temporary arrangement was in force, the plaintiff ejected the defendant's cashier and put another one in charge, of whom he collected $50, part of the proceeds of the business in the shop, with the avowed object of applying it to the rent, so as to prevent a forfeiture of the lease. The defendant was thereupon instrumental in causing the arrest of the plaintiff on a charge of grand larceny. The plaintiff gave bail, and was subsequently examined on the charge on September 12, 1889, and upon such examination was discharged by the St. Louis court of criminal correction. This arrest and prosecution gave rise to the present proceeding.

The defendant, upon the trial of the case at bar, offered in evidence the record of a suit instituted by plaintiff and his wife against the defendant on October 7, 1889, and charging the defendant with having wrongfully converted the property and business of the Lindell Hotel barber shop to his own use on or about August, 1889. The issues in that suit were referred to a referee, who made a finding of the facts and his conclusions of law thereon, and final judgment was entered upon such finding in favor of the defendant in the circuit court. The referee, among other things, found that the sheriff's sale under the Rapier judgment was effectual to convey to the purchaser the interest of both plaintiff and his wife in the Lindell Hotel barber shop. He also found that such sale worked a dissolution of the partnership between the defendant and the plaintiff's wife. On the objection of the plaintiff this record

was excluded, the defendant excepting, and this is the first error complained of.

The respondent contends that this finding and judgment were inadmissible in evidence, because they were not pleaded by way of estoppel. It is difficult to comprehend how the defendant could have pleaded this record by way of estoppel, since it is not conclusive either way, either on the question of malice or that of probable cause, which are the only ingredients of this action. But, while the judgment was not conclusive on either of these questions, it was conclusive on the ownership of the $50 which the plaintiff took, and the taking of which gave rise to the prosecution forming the foundation of this action. The record of the judgment offered in evidence, while it did not show that the defendant was guilty of larceny in taking the money, did show that the plaintiff was estopped from disputing the title of the defendant to the money, and that the money was that of the defendant, and the plaintiff had no interest therein. Such a showing had a material bearing both on the question of malice and probable cause, because all of the facts which led to the final judgment were then in existence, and were within the knowledge of both parties. It was not competent for the defendant to show, in support of probable cause, that the plaintiff was guilty of another and different offense than larceny (Hill v. Palm, 38 Mo. 13), but it was competent for him to show that the facts were such as justified the inference that the plaintiff was guilty of that offense, and that the defendant acted in an honest reliance on such facts. Throughout the trial plaintiff was permitted to testify that the rights of his wife in the shop had not been foreclosed by the execution sale, and that he was rightfully in the shop as the representative of his wife, and that he rightfully took the $50,

and the court by excluding the record deprived the defendant from showing conclusively, as that record did, that the money taken by plaintiff was neither his money nor that of his wife, but money belonging to the defendant. We think the court erred in excluding the record, and in so doing committed prejudicial error against the defendant.

The court on motion of defendant gave the following instruction: "By the term 'malice,' as used in the foregoing instruction, is meant a wrongful act, done intentionally without legal justification or excuse;. and by the term, reasonable or probable cause, as used in said foregoing instruction, is meant a belief supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the accused is guilty of the offense with which he is charged."

The court also gave on behalf of the plaintiff an instruction, defining probable cause almost in the identical words used in the above instruction. But the court declined to give the following instruction asked by the defendant, which refusal constitutes the second error complained of: "The jurors are also instructed that if they believe and find from the evidence that at the time plaintiff made the instrument purporting to convey an undivided one-half interest in the property and fixtures of the Lindell Hotel barber shop to his wife, he was in partnership with one Dora, under the name of Dora & Thomas; that no actual delivery of the said interest or property conveyed was, within reasonable time thereafter, made by plaintiff to his wife, regard being had to the situation and character of the property, but that plaintiff thereafter continued in possession thereof down to the time of the levy of the execution on said property, which has been introduced in evidence; that, at and prior to the time at which he, plaintiff, executed said instrument of conveyance to his

wife, he was indebted to one Rapier; that then the said
conveyance by plaintiff of his interest in the said barber
shop property was in fraud of the said Rapier, and plain-
tiff's wife acquired no title thereunder as against the debt
of the said Rapier. And, if the jurors find that the legal
representative of the said Rapier afterwards obtained
judgment in the St. Louis circuit court for said debt,
and thereafter execution was issued upon said judg-
ment and levied upon plaintiff's said interest in said
property, and said interest was, by the sheriff of the
city of St. Louis, on the tenth day of June, 1889, sold
and delivered to Mr. Julian Laughlin, that then the
said Laughlin acquired title to said interest in said prop-
erty as against both plaintiff and his said wife. And, if
the jurors believe and find further that the partnership
between defendant and plaintiff's said wife was dis-
solved on the said tenth day of June, and that, after
purchasing said interest, said Laughlin entered into an
arrangement with defendant Smith, whereby the latter
was to be permitted to use the said Laughlin's portion
of or interest in said property acquired as aforesaid in
carrying on the business of the said barber shop; that
under said arrangement said Smith was carrying on the
said business, and, while so doing, the plaintiff forcibly
ejected the cashier from said shop, and took possession
of the moneys therein, and for several days thereafter
continued to collect moneys and proceeds of the busi-
ness then and there being carried on by the defendant,
and during said time wrongfully took and carried away
fifty dollars ($50) of said moneys so taken in from said
business with the intent to convert the same to his own
use and without the consent of the defendant, and that
such moneys so taken by plaintiff were the same as those
mentioned in the criminal information against plaintiff;
that then these facts, if so found by the jury, as afore-
said, constitute reasonable or probable cause for the

institution of said criminal prosecution against plaintiff, and they should find a verdict in favor of the defendant."

No instruction was given by the court telling the jury what facts under the various hypotheses presented by the evidence would or would not amount to probable cause.

The law on this question is very simple, but its application to the individual case is often difficult. In *Hill v. Palm, supra,* Judge WAGNER thus states the law: "The question of probable cause is composed of law and fact; it being for the jury to determine whether the circumstances alleged are true or not, and for the court to determine whether they amount to probable cause. It, therefore, falls within the province of the jury to investigate the truth of the facts offered in evidence, and the justice of the inference to be drawn from such facts, whilst at the same time they receive the law from the court, that according as they find the facts proved or not proved, and the inferences warranted or not, there was reasonable and probable ground for the prosecution or the reverse, *and this rule holds, however complicated or numerous the facts may be."* The learned judge, having thus stated what has unquestionably been the common-law rule all the time, immediately proceeds to make a seeming misapplication of it by saying, "the facts being contested, the court decided rightly in leaving the matter with the jury, with instructions as to what constitutes probable cause," although in that case there was not even the vaguest legal definition of probable cause in any of the instructions given by the court, much less a submission to the jury for their finding of hypothetical facts, and the judgment of the court thereon as to whether such facts did or did not constitute probable cause. Ever since that decision was made, the courts of this state were engaged in a

struggle to reconcile in some manner the seeming incongruity between the statement of the law in that case and its application to the point in judgment. All the decided cases since, with the seeming exception of *Meysenburg v. Engelke, infra,* substantially concede this to be the rule. *The question of probable cause on conceded facts is a pure question of law, and on disputed facts is likewise a question of law, based upon the hypothetical finding of the jury; yet, in the absence of a request by either party that the court do charge the jury what facts, if found, will or will not amount to probable cause, the omission of the court so to charge is mere non-direction, and hence not error.* It is only on this theory that the judgments actually rendered in *Callahan v. Cafferata,* 39 Mo. 136; *McGarry v. Railroad,* 36 Mo. App. 340, and to some extent the first opinion in the case of *Sharpe v. Johnston,* 59 Mo. 557, can be supported. It is true that in *Meysenburg v. Engelke,* 18 Mo. App. 354, it was held error for the court to give an instruction on the question of probable cause in general terms, but, as in that case the defendant did ask proper instructions based upon an hypothesis of ·facts which were refused, the point decided is not in conflict with what is herein said. The definition of probable cause as an abstract legal proposition is correctly stated both in the plaintiff's instruction and that of the defendant, and, under the previous rulings in this state, we would not be warranted in reversing the judgment for non-direction on that account.

But the refusal of the defendant's specific instruction, submitting the facts for the finding of the jury which the defendant claimed, if found, did constitute probable cause, was error. There was ·evidence tending to prove every element contained in that instruction, and its unusual length was necessitated by the fact that the court excluded the record of the

Gerrans v. The Wenger Mfg. Co.

judgment, which set conclusively at rest many facts stated in that instruction. It is true that the plaintiff, having been discharged upon preliminary examination by the committing magistrate, could not, under the rule stated *arguendo* in *Brant v. Higgins*, 10 Mo. 728, and approved in *Casperson v. Sproule*, 39 Mo. 39, be nonsuited, but that discharge raised no question of fact. Its effect as evidence was a mere question of law, and whether certain other facts, if shown, had the legal effect to overcome plaintiff's *prima facie* case made out by his discharge on preliminary examination, was a pure question of law. It is our duty to say whether the facts stated in defendant's instruction, if found by the jury to be true, constituted probable cause in law for the prosecution. We are of opinion that they did, and, hence, that the refusal of that instruction was prejudicial error.

The judgment is reversed and the cause remanded. All the judges concur.